### Walker's Trustee, etc. v. Walker, et al.

(Decided November 3, 1922.)

### Appeal from Madison Circuit Court.

1. Executors and Administrators—Sale of Devised Property.— Neither an executor nor an administrator with the will annexed, conceding the powers of the latter to be as broad as those of the former, has power to sell the devised property, unless by express terms of the will, or by necessary implication, which latter arise? from the fact that a sale is necessary in order to perform the duties imposed.

2. Wills—Construction.—The law favors a division of property in kind rather than a sale of it and a division of the proceeds, and doubtful language will be construed as directing a division in kind rather than a direction to sell for the purpose of division when the former can be done by preserving the rights of all parties interested.

3. Trusts—Personal Representatives—Implied Power.—Whether, under the facts of this case as presented by the record, the personal representative had the implied power to obtain a decretal sale for enough of the trust property to equalize the advancements made to the beneficiaries is not determined, since the right or power to make the sale is claimed on the ground that it is the duty of the trustee and representative to make division of the property and that the right to sell all of it for that purpose is given by the will.

JOHN NOLAN and J. A. SULLIVAN for appellant.

ARTHUR B. BENSINGER and J. VERSER CONNER for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Joel J. Walker died testate and a resident of Madison county on December 1, 1881. His will was executed by him on January 25, 1879, to which he added a codicil

on July 7, 1881. The will and codicil were duly probated after his death and the seventh item into which it was divided says: "I give my executor in trust for the sole and separate use of my former servant, Mary Jane (who has never left me) and her children, named Belle, Jeff Davis, Bettie, John Morgan, Speed Smith, and Jane Taylor, the following named property and money (to-wit) the house and ground on which I now live, also that part of the Riley and Baxter lots not sold to Owen McKee, also seventy acres more or less, called the Hawkins place lying west of town adjoining the lands of R. White, John D. Harris, Jno. Scott, the heirs of C. J. Walker, deceased, and W. M. Irvine, also three poles of land adjoining the cemetery inside the fence, of the land so given to the children of C. W. Walker, deceased, to begin on the cemetery line, nearly opposite my own grave yard, to be laid off two poles long and one-half wide, also my household and kitchen furniture, stock, tools, provisions, corn, &c. and all, everything belonging or attached to the lands belonging to me. Also forty thousand dollars 4 per cent U. S. bonds, ($40,000.00) the interest to be paid over as it may be needed for the support and education of the children. My executor may at any time a majority concurring at the request of Mary Jane and her children sell any or all the real estate to be reinvested in other property that they may prefer to be held in like manner. I do not wish that Mary and her children should be permitted to use the estate left them extravagantly and come to want of which the executors must be the judge, if the children should be inclined to take care of their property my executors may at any time after they arrive at the proper age make any or all of them such advances as my said executors may think safe and prudent, charging each one with whatever he or she may receive. If any one of the children should not be inclined to take care of the estate left them such so acting are not to receive any part or portion of his or her estate than support until he or she shall arrive at the age of thirty years. It is my wish that each and every one of the children be provided for so soon as they give some evidence by their acts that they will take care of their estate. All the children remaining with their mother must be supported out of the estate. At the death of Mary an equal divide of the balance, if any. If any one of the legatees of this complain he or she is excluded and his or her portion falls back to my estate and must

be divided among the balance *pro rata*. Each of the legatees must settle with the other before receiving any part of my estate. No inventory of my estate is to be taken as it consists of U. S. 4 per cent bonds and stocks and enough to pay all. Whatever is left to be equally divided each brother and sister one share.''

The servant therein mentioned gave birth to another child after the will was executed whose name was Annie, and the codicil made her an equal beneficiary with the other children named in the will, and also added other property to the trust fund. The testator appointed as executors of his will, and who by virtue thereof became trustees under its seventh item, five named persons, none of whom qualified except J. Stone Walker, and on the 26th day of June 1882 he, as such trustee and executor, brought a suit against the devisees mentioned in item seven of the will to obtain a construction thereof and directions as to his duties in the way of making advancements and otherwise carrying out the intention of the testator. That suit it seems remained continuously upon the docket after judgment entered and in it the trustee from time to time made settlements of his actions and doings. Some time in 1905 J. Stone Walker, who had managed the trust up to that time, resigned as trustee as well as executor of the will, whereupon the appellant here, State Bank and Trust Company of Richmond, Kentucky, was appointed and duly qualified as trustee and continued to serve as such until November —, 1919, when the devisee, Mary Jane Walker, died. Following her death appellant was by orders of the Madison county court duly appointed and qualified administrator with the will annexed of the estate of Joel J. Walker, and on January 19, 1920, as such administrator with the will annexed, it filed an amended petition in the pending action of J. Stone Walker, Executor, etc. v. Joel J. Walker's devisee, under the seventh item of his will, in which amendment it was alleged that the trust created by the will of the testator was terminated by the death of Mary Jane Walker; that item seven of the will under consideration imposed the duty on the personal representative of the decedent to divide the property bequeathed among those entitled to it at the death of Mary Jane, and that it was necessary for that purpose that the property, which at that time consisted only in the real estate devised, should be sold; that the administrator

could and would sell it to a better and greater advantage than could the devisee; that a more advantageous sale could be made by dividing the property into small parcels, and the prayer asked for an order of sale in the manner indicated but to be made by the master commissioner of the court. All the devisees, except one, were summoned or appeared and that one was brought before the court by constructive service. Those actually before the court filed a demurrer to the amended petition in so far as it sought a judgment for a sale of the land by or at the instance of the administrator, which demurrer was sustained and the amended petition dismissed, from which judgment the administrator with the will annexed prosecutes this appeal.

It does not appear from the allegations of the amendment that there were any debts to be paid out of the trust estate either on its own account or as obligations of the testator; and the only reason for the sale, as alleged in the amendment is, "that in order to have a proper distribution and equal division of the proceeds of said estate among the devisees herein named it will be necessary to sell said real estate, and that same is so situated that in order to realize the best sale of same, it will be necessary to have said town lots surveyed and sub-divided in lots with openings for new street or streets, and to divide the farm in small tracts, and that if said real estate, including the town lots and farm, is so surveyed and divided the salable value will be greatly enhanced thereby, and the executor will thereby be enabled to make the best and most advantageous division and distribution of the estate to the within-mentioned devisees of Joel L. Walker and heirs of Mary Jane Walker." Besides the Hawkins place named in the will and which contains about seventy acres, part of which is within the corporate limits of the city of Richmond, it appears that the home place of the testator, which was also included in item seven of his will, contains about eight acres and is situated in the most attractive residential part of that city.

It is admitted by appellant's counsel that neither an executor of a will, nor an administrator with the will annexed has the power to sell the real estate of his decedent unless such power is given him by the will either in express terms or by necessary implication, which our investigation convinces us is the universal rule. Many

cases, both foreign and domestic, as well as text writers might be referred to in substatiation of the general principle, but a domestic case in point is Marrett v. Babb's Executor, 91 Ky. 88, and it is preceded as well as followed by a number of other cases from this court to the same effect.   In that case there was not only express power given to the personal representative to make the sale but it further appeared that the testator was largely indebted, and it was necessary, in order to enable the personal representative to discharge his duties as such, including the payment of the debts of his decedent, that the land should be sold as expressly directed by the will, and of course there could be no question about the right to do so.   The same conditions, as we read the cases, existed in Evans v. Evans, 134 Ky. 637, and Hanna v. Prewitt, 153 Ky. 310.   Those cases, as well as all others upon the subject, hold in substance that the power to sell will be implied whenever it is necessary for the personal representative to receive and distribute the avails or proceeds of the real estate in order to carry out the duties which the gleaned intention of the testator, as gathered from his entire will, imposed upon him.   11 R. C. L. 398, paragraph 480, where a great number of cases substantiating that statement of the general rule as to implied power of sale, are cited in the notes.   Counsel for both sides have gone most exhaustively into the subject and have cited a great number of cases in substantiation of the above general rules, but we do not think it necessary for the purpose of this opinion to refer to any more of them than we have already done.

It will therefore be seen that in the absence of express power of sale (and it is conceded that there is none such in this case) the question becomes one of intention on the part of the testator as to whether he intended in any event to vest his executor with an implied power of sale, and this, as we have seen, is to be determined upon the further question as to whether the sale is necessary in order to carry out the express powers given the executor.   In determining, however, those questions it should be kept in mind that the law favors the division of property *in kind* rather than a sale of it followed by a division of the proceeds.   Kirk v. Crutcher's Admr., 145 Ky. 52.   If, therefore, the language of the will is clearly sufficient to confer upon the executor the authority as well as the duty to make the division provided for, it

does not necessarily follow that the right and power *to sell* the property is given to the executor, unless such a sale is necessary to a proper execution of the duty to make division at the time provided for. The only provisions in the will under consideration with reference to a division of the property among the children of Mary Jane are: "At the death of Mary an equal divide of the property, if any," and "whatever is left to be equally divided each brother and sister one share."

It is further provided in the will that the trustee, during the existence of the trust, (which it is conceded terminated at the death of Mary Jane), should charge "each one with whatever he or she may receive," and that "each of the legatees must settle with the others before receiving any part of my estate." The record shows that on February 3, 1920, and before the rendition of the judgment appealed from, the appellant filed in the cause its final report of settlement presumptively showing the state of its account up to that day, but the report is not in the record and the clerk certifies that it was not copied because of instruction from appellant's attorney. As we have before seen, there are no debts alleged nor any other fact from which an implied power of sale might arise, but it is averred that the trustee now holds cash or its equal to the amount of $2,900.00 belonging to the trust fund, and it is stated in brief that one of the devisees has received advancements to the total sum of $8,520.00; another $8,218.00, and the other four $7,000.00 each, with only the $2,900.00 on hand to equalize the advancements. It is, therefore, insisted that because of that fact it is necessary for appellant to sell the land to make the equalization, and an implied power to do so arises. That contention, however, is based not upon any pleading or other portion of the record but upon facts *dehors* the record, and it further assumes that both the duty to divide as well as the one to equalize the advancements among the six devisees, are imposed upon the executor by the terms of the will, both of which assumptions are, to say the least of it, exceedingly doubtful. If, however, it were true that the language of the will imposed upon the executor (or the administrator with the will annexed) the duty to make division at the death of Mary Jane, it would seem that a division in kind was contemplated and not a sale of the property and a division of its proceeds, since the division was to be made "of the

balance'' and of ''whatever is left,'' each of which expressions are applicable to the character and kind of property in existence and on hand at the date provided for the division, which might or might not be property of a different character than that covered by the will, for the executors were expressly empowered to sell and reinvest any of the property with the consent of Mary Jane and her children, and if that was done then the division would necessarily operate on whatever character of property was on hand at the time, subject to the rights of the devisees to be equalized in making it and subject, further, to the payment of legitimate debts of the testator or of the trust estate of which there were none as we have seen. The disparagement in the amount of advancements as stated in brief if accepted as true is not, according to our minds, sufficient to require a sale of the *whole* property in order to effectuate an equalization in its division. The nature of the property is evidently such that it can be divided in kind in the requisite six portions and that equalization can be effected by allotting to those receiving the highest advancements less land than that allotted to those receiving the smaller advancements. If, however, the inequality in advancements are such that they could not be adjusted by a division of the land *in kind,* and if the beneficiaries, all of whom are *sui juris,* will not agree to release and discharge the trustee and take the property burdened with the duty of equalization among them, thereby rendering it necessary to convert some of the property into cash for the purpose of adjusting the advancements, then possibly the trustee would have the right to ask for a decretal sale of enough of the property to realize, with the $2,900.00 on hand, the required sum, or as near thereto as possible, but no more. The condition of the record, however, presents no such question for our determination, since the amended petition insists upon the right to sell *all* the property under the claimed power of sale and only for purposes of division, and that was the only question adjudicated by the trial court.

We are, therefore, of the conclusion that, under the facts presented, no such power of sale existed and the court properly sustained the demurrer to the amended petition, and the judgment is affirmed.